TAYLOR *v.* BALLARD *et al.*

(*Supreme Court, General Term, Fourth Department.* July, 1888.)

SALE—QUANTITY OF GOODS INTENDED—FINDING OF JURY.

In an action for the price of hay, where plaintiff alleges the sale of a certain quantity, being the remainder of a stack after reserving a part, and defendants, under a general denial, produce evidence tending to show that they bought only so much of the remainder as might be good hay, and that they received only one load, the hay not being good, the question is not one of warranty, but how much was sold; and a finding of the jury, upon the issue, for defendants, is conclusive.

Appeal from Otsego county court.

Action by Thomas Taylor, Jr., against Sidney M. Ballard and John Millard for the price of hay. Judgment rendered upon the verdict of the jury in favor of the plaintiff for $11.64 damages, from which plaintiff appeals. Plaintiff in his complaint alleges "that on or about June 1, 1884, he sold the defendants 7,440 pounds of hay at the agreed price of $12.00 per ton." The defendants in their answer "deny each and every allegation in the complaint." The plaintiff insists the verdict which he recovered was insufficient, and that the insufficiency was caused by evidence alleged to be improperly received upon the trial.

Argued before HARDIN; P. J., and FOLLETT and MARTIN, JJ.

*Clarence L. Barber*, for appellant. *Edick & Smith*, for respondents.

HARDIN, P J. To ascertain what the contract was between the parties in respect to the sale of the hay, the resort was necessarily had to oral testimony, as the contract rested wholly in parol. The plaintiff, to maintain his action, testified, viz.: "Mr. Millard came there once or twice. He wanted the stack of hay I got of Badger. I reserved one load for myself, one load for John Blunk, and the defendants were to have the balance at $12.00 per ton. I drew my last load the 6th of March, 1885. That was the last time I was there. At time I sold this hay to defendants, I had drawn three or four loads from the stack. I sold the defendants the whole of the stack that was left at time I sold it to them, except the two loads reserved." He also testified that he did not tell the defendants, in the conversation in which the purchase is alleged to have taken place, that they "would take what was left of the stack of good hay at $12.00 per ton." Defendants' position upon the trial was that they had not purchased the whole hay in the stack, and that they had only purchased "the balance of it that was good hay," and therefore that the plain-

tiff had never sold to them any more hay than they had received, to-wit, 1,940 pounds, for which quantity the verdict was given. Millard, one of the defendants, testified, in respect to the contract of purchase, as follows, viz.: "Mr Taylor said he had some hay to sell, and I said I would like to buy it. He said he had part of a stack. He was to reserve two or three loads, and I was to have the balance of it that was good hay. What was poor I was to throw off. The price was to be $12.00 per ton. That was in front of Mr. Taylor's house,—just night. Winslow was with me. I did not go to see the stack. I sent after hay then; sent Mr. Parish. I got one load, drawn by Parish, that was understood came from there. That was not good hay." The defendants called as a witness, Parish, who drew the load of hay which the defendants had received, and he gave evidence tending to show that the hay which he left undrawn was not good hay, and he also remarked that the hay which he drew "was not first-class hay; was not good hay." It appeared by the evidence that the hay had been in stack about two years; that the ground around it was more or less moist; that the hay had been subjected somewhat to the action of the weather.

If the jury believed the contract to have been as stated by the plaintiff, then the damages are insufficient, for the plaintiff would be entitled to recover for the whole quantity of hay in the stack owned by the plaintiff at the time of the sale, less the two loads reserved for other parties. The theory of the defendants, somewhat supported by the testimony, is that they purchased only such part of the stack as was "good hay;" or, as one of the witnesses states it, the defendants were "to have the balance of it that was good hay. What was poor I was to throw off." We think the issue between the parties as to what was the contract of sale, or what the quantity of hay sold, was, upon the evidence delivered before the trial court, a question of fact. If the jury found the contract to be as claimed by the defendants, then their verdict was sufficient upon the question of damages. If the jury found the contract to be as claimed by the plaintiff, then their verdict was insufficient to cover the damages to which the plaintiff would be entitled to recover. The jury were entitled to believe or disbelieve the testimony of the plaintiff, as he was the interested party. The same remark applies to the testimony of the defendant Millard. It is the privilege of the jury to reconcile their testimony, if possible. If it was unreconcilable, then it was their duty to disbelieve one or the other. *Elwood* v. *Telegraph Co.*, 45 N. Y. 549; *Kavanagh* v. *Wilson*, 70 N. Y. 177; *Gildersleeve* v. *Landon*, 73 N. Y. 609; *Koehler* v. *Alder*, 78 N. Y. 287, 9 Wkly. Dig. 79, opinion of BARKER, J., in cases cited; *Carbon-Works* v. *Schad*, 38 Hun, 71; *Kinney* v. *Pudney*, 46 How. Pr. 258; *Boone* v. *Kalb*, 20 Wkly. Dig. 26. In *Deifendorff* v. *Gage*, 7 Barb. 18, the purchaser saw the hay and examined it, and it was held that in the absence of any fraud "or warranty on the part of the vendor, and after an examination of it by the purchaser, with all the means of knowing its condition and quality which the vendor possesses, the fact that the property is good for nothing, and that no use can be made of it, forms no defense to an action for the price." That case differs from the one before us. It was there held, also, that a warranty of the quality of the hay in question could not be shown in the absence of the defense of that character set up on the pleadings. We are of the opinion, in this case, that the defendants were not in a situation to show the warranty of the quality of the hay referred to in the contract between them and the plaintiff; nor does it appear, by the verdict, that the jury made any allowance for any imperfections in the load of hay which the defendants received. If the jury found that there was no good hay left in the stack after Parish had taken away the load, then the defendants have received all the hay they purchased, if the contract was of the character they have indicated by their testimony; and it is inferable that the jury have found in their verdict that the defendants' purchase was no greater than the quantity of hay which they received,

and for which the jury awarded the plaintiff a verdict. The burden was upon the plaintiff to show the quantity of hay which he sold. He alleged the quantity to be 7,440 pounds. If that was the quantity sold, then, clearly, the verdict was insufficient, for the defendants were not in a situation to defend upon the ground that there had been a fraudulent practice, or that there had been a warranty and a breach thereof. If the defendants had desired to make a defense predicated upon a warranty, and a breach thereof, they should have set up a defense in their answer. *Brown* v. *Tuttle*, 66 Barb. 172; *Gillespie* v. *Torrence*, 25 N. Y. 309; *Deifendorff* v. *Gage, supra; Morrell* v. *Insurance Co.*, 33 N. Y. 443. However, as the burden was upon the plaintiff to show the quantity of hay which he sold, and he had averred the quantity to be some 7,440 pounds, it was entirely competent for the defendants, under a general denial, to controvert the allegations of the plaintiff's complaint by evidence tending to show that the allegations were untrue, and that the evidence given by the plaintiff, tending to support the allegations, was unreliable. *Hebbard* v. *Haughian*, 70 N. Y. 54, 55; 2 Wait, Law & Pr. (5th Ed.) 653; *Griffin* v. *Railroad Co.*, 101 N. Y. 348, 4 N. E. Rep. 740.

Accepting the verdict of the jury as conclusive upon all the questions of fact raised at the trial, it follows, from the views already stated, that the county court was right in affirming the justice's judgment. Judgment of the county court of Otsego county affirming the judgment of the justice's court affirmed, with costs.

FOLLETT and MARTIN, JJ., concur.